# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-354-JDR-SH

MEGAN SLINKARD; JON SLINKARD

*Plaintiffs,*

*versus*

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, OK-LAHOMA, *doing business as* TULSA PUBLIC SCHOOLS; ALPHA BENSON; DEBORAH GIST,

*Defendants.*

## OPINION AND ORDER

Rule 56 of the Federal Rules of Civil Procedure requires the party seeking summary judgment to provide the Court with the factual basis for its motion by either citing to the record or showing why the record cannot establish a basis for the non-moving party's claims. Fed. R. Civ. P. 56. Defendant Tulsa Public Schools argues that it is entitled to summary judgment with regard to Plaintiffs Jon and Megan Slinkard's claims that TPS violated their constitutional rights by banning Ms. Slinkard from TPS property, terminating Ms. Slinkard's employment at a TPS school, and denying Mr. Slinkard the opportunity to speak at a school board meeting. Dkt. 82 at 15-24.[1] But TPS offers little in the way of factual support for its position, choosing instead to rely on Plaintiffs' allegations and this Court's rulings on prior motions. These materials fail to establish that TPS is entitled to summary judgment, and the

---

[1] All citations use CM/ECF pagination.

No. 23-cv-354

Court is not obligated to search the record for facts that could support TPS's motion. Accordingly, TPS's motion for summary judgment is denied.

I

A party moving for summary judgment bears the initial burden of showing (1) evidence disproving an element, or (2) directing the Court's attention to an absence of proof of an essential element. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In either case, the moving party must point to evidence in the record to support its burden. Fed. R. Civ. P. 56(c); *see also* N.D. Okla. Local Civ. R. 56. TPS's motion for summary judgment includes a number of purportedly undisputed facts. Dkt. 82. But many of these facts do not reflect or recite record evidence. Instead, facts one through six identify the parties and summarize prior filings, seven through eighteen quote this Court's prior rulings, and nineteen and twenty provide procedural history related to other filings. *Id.* at 7-11.

The remaining facts proffered by TPS as undisputed are as follows. Ms. Slinkard was a TPS employee performing support functions from October 2022 until her termination on February 23, 2023. *Id.* at 11. On February 3, 2023, Ms. Slinkard arrived at East Central to pick up her son. *Id.* She entered the school and Principal Benson told her she needed to leave because the school was on lockdown. *Id.* During this conversation, Ms. Slinkard used an unidentified profanity. *Id.* Ms. Slinkard then stated, "I don't care I want my kid." *Id.* at 12. Later, Ms. Slinkard spoke with TPS's human resources department about the incident. *Id.* Ms. Slinkard was then terminated. *Id.*

Ms. Slinkard does not dispute these facts in any substantive way, although she argues that many of TPS's statements of fact are irrelevant, misinterpret her actions, and generally cannot support summary judgment. Dkt. 90 at 3-13. Ms. Slinkard raises additional facts relating to her son's IEP, prior

2

No. 23-cv-354

alleged discriminatory treatment by TPS, and her attempts to communicate with TPS officials. *Id.* at 15-19.[2]

As for the February 3 incident, Ms. Slinkard states that she arrived at the school, was let in by a school employee, and then Principal Benson directed her to leave and used profanity as he did so. *Id.* at 20. Ms. Slinkard states that she safely departed school grounds when she left. *Id.*

Ms. Slinkard states that a letter banning her from TPS property had been prepared in advance of the February 3 incident and that the events of February 3 were then added to the letter before it was sent to her. *Id.* at 21. The contemporaneous notice of suspension from her employment relied on the same narrative as the ban letter. *Id.* Her later investigation interview and termination letter then solely relied on the February 3 incident without including other facts. *Id.* at 22. Ms. Slinkard notes that these adverse actions were in close temporal proximity to her advocacy for her son. *Id.*

II

Summary judgment is only proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "review the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir.

---

[2] TPS objects that Ms. Slinkard only supports these facts by reference to her verified complaint. Dkt. 93 at 4-5. But a court is permitted to rely on a plaintiff's verified complaint for purposes of analyzing a summary judgment motion. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010). The Court will accept these facts as undisputed for purposes of this motion. TPS raises other, general disputes about Ms. Slinkard's characterization of her facts but does not dispute their veracity.

No. 23-cv-354

2001) (citing *Byers v. City of Albuquerque*, 150 F.3d 1272, 1274 (10th Cir. 1998)). As a threshold matter, "if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006).

## A

TPS argues that the Slinkards cannot pursue claims against it because this Court has already dismissed the Slinkards' claims against two other defendants, Superintendent Deborah Gist and Principal Alpha Benson, and TPS cannot be held liable for a constitutional violation by one of its employees when those same employees are not themselves liable. Dkt. 82 at 15. In support of this argument, TPS relies on *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (recognizing that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers").

TPS misunderstands both *Hinton* and the Court's prior orders. In *Hinton*, the court granted *summary judgment* to the officers first, holding that the officers involved in the alleged deprivation had not violated the Constitution. Only then did the court grant summary judgment to the city because there was no underlying violation for which the city could be liable. 997 F.2d at 782. That is not what happened here. Here the Court ruled that the Slinkards had not pleaded sufficient facts to state a claim against Principal Benson and Superintendent Gist that could survive their assertion of qualified immunity. Dkt. 44 at 19-21. It did not hold that those Defendants had not violated the Plaintiffs' constitutional rights as a matter of law. *See id.* (holding that "[t]he Slinkards *have not established* that Principal Benson [or Superintendent Gist] violated their constitutional rights" (emphasis added)).

4

No. 23-cv-354

This Court's dismissal for failure to state a claim under Rule 12(b)(6) was not a judicial determination that no constitutional violation had taken place. The Court's order considered the form of the complaint to determine whether the Plaintiffs had stated a claim. It did not weigh the undisputed facts to determine if a reasonable jury could find in the Slinkards' favor. And although the Court granted the motion to dismiss in this case, the Court did not dismiss the claims with prejudice—the Slinkards could have amended their complaint to cure the claims against Principal Benson and Superintendent Gist. The fact that the Slinkards did not amend to allege claims against Principal Benson and Superintendent Gist does not establish as a matter of law that they could not have done so.

Had TPS argued that there are no facts to support the Slinkards' claims (and pointed to record evidence in support of its position), the Court could consider the evidence and determine whether a reasonable jury could find in the Slinkards' favor. But TPS *only* argues that it is entitled to summary judgment based on the Court's prior rulings. Dkt. 82 at 15-16. The Slinkards had no duty to present evidence establishing their claims when TPS did not argue such evidence is lacking. It would be improper for this Court to grant summary judgment on an issue to which the Slinkards have not had an opportunity to respond. *Benton v. Adams Cnty. Bd. of Cnty. Comm'rs*, 303 F. App'x 625, 631-32 (10th Cir. 2008). Because TPS's motion is premised solely upon its claim that it cannot be held liable based on the Court's prior order, the Court denies TPS's motion for summary judgment with regard to the Slinkards' claims that (a) Okla. Stat. tit. 21, § 1376 was unconstitutionally applied against Ms. Slinkard, (b) Ms. Slinkard was unconstitutionally denied procedural due process after imposition of the ban, (c) the ban subjected Ms. Slinkard to retaliation against her for her exercise of her rights under the First Amendment, and (d) the prior review pursuant to Board Policy 1301 of Mr. Slinkard's request to speak at a board of education meeting constitutes prior restraint of speech in violation of the First Amendment.

No. 23-cv-354

## B

TPS argues that Ms. Slinkard cannot prevail on her retaliation claim because there is no evidence that she was fired in retaliation for her speech. Dkt. 82 at 16. The Slinkards respond that the undisputed material facts leave open the possibility that TPS's stated reason for firing her was pretextual and TPS was in fact motivated by a desire to suppress Ms. Slinkard's speech. Dkt. 90 at 23-24.

When analyzing a claim of retaliation against a government employee, a court must determine (1) "whether the speech was made pursuant to [the] employee's official duties," (2) "whether the speech was on a matter of public concern," (3) "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests," (4) "whether the protected speech was a motivating factor in the adverse employment action," and (5) "whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). "To prevail, a plaintiff must establish all five elements." *Id.* TPS argues that Ms. Slinkard cannot establish either the second or fourth element. Dkt. 82 at 16.

Starting with the second element, for Ms. Slinkard's speech to be "on a matter of public concern," "the speech must fairly relate to a matter of 'political, social, or other concern to the community'" as determined by the "'content, form and context' of the speech." *Hedquist v. Patterson*, No. 14-cv-0045-J, 2017 WL 10831413, at *13 (D. Wyo. Apr. 14, 2017) (quoting *Lane v. Franks*, 573 U.S. 228, 237 (2014)), *aff'd sub nom. Hedquist v. Beamer*, 763 F. App'x 705 (10th Cir. 2019). But TPS has not asserted that none of Ms. Slinkard's statements fall within this category. Although the statements TPS cites only concern private matters, such as Ms. Slinkard's statement that "I don't care I want my kid" [Dkt. 82 at 11-12], Ms. Slinkard points to other statements by her from prior to February 3. Dkt. 90 at 15-18, 21-23. These statements indicate that the Slinkards had an extended set of disputes with

No. 23-cv-354

East Central and TPS and that they had attempted to advocate for their son numerous times. *Id.* If it is TPS's position that *none* of these discussions involved matters of public concern, it should have pointed to affidavits or other evidence to that effect.[3] Fed. R. Civ. P. 56.

In any event, Ms. Slinkard has pointed to several statements that could support the conclusion that she spoke with TPS on matters of public concern prior to being fired. Dkt. 90 at 15-18, 21-24. TPS's only retort is that these facts "show that Megan Slinkard had repeatedly directed profanity and insults toward the staff of the school," which is neither stated nor implied by Ms. Slinkard's proffered facts. Dkt. 93 at 6. TPS has not pointed to any facts supporting this interpretation, and the Court will not adopt it without some basis.

Assuming that Ms. Slinkard's pre-February 3 statements were on a matter of public concern, the Court must still consider whether a reasonable jury could find a connection between Ms. Slinkard's protected speech and her subsequent termination. *Knopf*, 884 F.3d at 945. The limited facts about the February 3 interaction provided by TPS only state that Ms. Slinkard entered East Central, used a single profanity, and left. Dkt. 82 at 11-12. A reasonable jury could find that this single interaction was not sufficient to support terminating Ms. Slinkard's employment, indicating that TPS had some other reason for its decision. Further, considering TPS's reaction in tandem with the draft ban letter, which was written after Ms. Slinkard's statements on matters of public concern and about which TPS has provided no context,

---

[3] The Court recognizes that the record in this case is far more fulsome than the parties' statements of undisputed material fact show and that it retains the discretion to look into the record to consider evidence not cited as part of its summary judgment analysis. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). But the Court is not required to exercise that discretion and engage in a fishing expedition to cure a party's argument. *Id.*; *Hampton v. Barclays Bank Delaware*, 478 F. Supp. 3d 1113, 1121 (D. Kan. 2020), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021). The moving party has the duty to marshal the facts supporting summary judgment, and the Court is unwilling to perform that duty in its stead.

7

a reasonable jury could find that Ms. Slinkard was retaliated against for her constitutionally protected speech. Dkt. 90 at 21. Since TPS has not shown that Ms. Slinkard's speech was not on a matter of public concern and a reasonable jury could find in Ms. Slinkard's favor, the Court denies TPS's motion for summary judgment as to her First Amendment retaliation claim.

C

Last, TPS argues that Ms. Slinkard was not entitled to due process in her termination under Oklahoma law. Dkt. 82 at 23-24. In general, whether a state government employee "has a sufficient property interest in [her] employment" to be protected by due process "is a matter of state law." *Calhoun v. Gaines*, 982 F.2d 1470, 1474 (10th Cir. 1992) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). Oklahoma law establishes that "[a] support employee who has been employed by a local board of education for more than one (1) year shall be subject to suspension, demotion, termination or nonreemployment only for cause." Okla. Stat. tit. 70, § 6-101.40. It also establishes that "[a]fter any suspension or prior to any demotion, termination or nonreemployment, a support employee shall receive notice of the right to a hearing" and that "[f]ailure to request a hearing within ten (10) working days of such notice shall be considered a waiver of the employee's right to a hearing." Okla. Stat. tit. 70, § 6-101.46. The phrasing of this statute is unambiguous; although support employees who have been employed for less than a year may be terminated without cause, they still retain the right to a hearing "before the local board of education." *Id.* And the Oklahoma Court of Civil Appeals has found that even when an employee has "no constitutionally protected property interest in continued employment" the employee is still entitled to notice and a hearing on any adverse termination decision. *Isch v. Oklahoma Indep. Sch. Dist. No. I-89*, 1998 OK CIV APP 90, ¶ 5, 963 P.2d 18, 21.

Ms. Slinkard was employed by TPS for less than one year; thus, she could be terminated without cause. Dkt. 82 at 11; Okla. Stat. tit. 70, § 6-101.40. She was nevertheless entitled to a hearing on that decision. *Isch*, 1998

No. 23-cv-354

OK CIV APP 90, ¶ 5, 963 P.2d 18, 21. Ms. Slinkard had an interview with TPS human resources to discuss the events of February 3, but there is no evidence of any other interview or hearing in the parties' briefs. Dkt. 82 at 11. TPS has not presented any evidence or argument of an exception that would prevent Ms. Slinkard from being afforded the hearing requirement protections of Okla. Stat. tit. 70, § 6-101.46, nor has it presented any facts indicating that she received a hearing before the local board of education. Instead, the only fact that TPS gives related to a hearing is that Ms. Slinkard had the opportunity to speak to a member of TPS's human resources staff. This does not match the requirements of Okla. Stat. tit. 70, § 6-101.46. TPS has thus not shown that it gave Ms. Slinkard the rights afforded to her under Okla. Stat. tit. 70, § 6-101.46.[4] The Court denies TPS's motion for summary judgment as to Ms. Slinkard's claim that her due process rights were violated by her termination.

### III

For the reasons given above, TPS's motion for summary judgment is denied.

DATED this 4th day of May 2026.

JOHN D. RUSSELL
*United States District Judge*

---

[4] TPS argues that Ms. Slinkard was not entitled to any due process protections because of her short tenure. But the Court recognizes that if TPS's proffered interpretation of Okla. Stat tit. 70, § 6-101.46 were to hold, it would mean that there would be no Oklahoma procedural protections in place for a support employee terminated in less than one year for an unlawful reason, such as racial or sexual discrimination. The statutory scheme to which TPS cites is designed to provide school district employees with employment protections. Adopting TPS's interpretation and adding a requirement to Okla. Stat. tit. 70, § 6-101.46 that employees working less than one year may be denied a hearing would not only add a term that is not included in the text, but it would subvert the apparent rationale for the statute and the protections it puts into place for school district employees.