# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-354-JDR-SH

MEGAN SLINKARD; JON SLINKARD,

*Plaintiffs*,

*versus*

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, OKLAHOMA, *doing business as* TULSA PUBLIC SCHOOLS,

*Defendant*.

## OPINION AND ORDER

Jon Slinkard's Rule 50(b) motion turns on a single question: Did the jury have a legally sufficient evidentiary basis to find that Tulsa Public Schools did not violate Mr. Slinkard's First Amendment rights when it rejected his request to speak during a school board meeting? Mr. Slinkard argues that TPS excluded him because of his viewpoint. According to TPS, it denied Mr. Slinkard's request to speak because his proposed comments concerned a topic subject to a separate administrative process, and TPS policy prohibits speakers from addressing those topics. The trial record provided a sufficient basis for the jury to find that TPS's denial was lawful, and Mr. Slinkard is not entitled to judgment as a matter of law. His motion is denied.

Within his motion is a separate but related argument that Instruction 17 was legally erroneous. Dkt. 139 at 6-9. Mr. Slinkard argues that the Court's instruction foreclosed the jury from deciding whether the alleged constitutional violation occurred. *Id.* at 6. Mr. Slinkard's challenge to the instruction is properly raised by a motion for new trial under Rule 59. *Henning v. Union*

*Pac. R.R. Co.*, 530 F.3d 1206, 1216-17 (10th Cir. 2008) (rejecting district court's use of Rule 50(b) standard to analyze challenges to evidentiary rulings and jury instructions and holding that Rule 59's new-trial standard applies instead). Recasting his argument as one for a new trial, *see infra* Part III, the Court finds that Instruction 17 correctly stated the governing law and provided the jury with a sufficient understanding of the issues and the applicable standard. *See Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1197 (10th Cir. 2022). The Court denies Mr. Slinkard's motion.

I

After Megan and Jon Slinkard raised concerns about TPS's treatment of their son, Mr. Slinkard submitted a request to speak at the February 2023 school board meeting about "an injustice regarding [his] son." Plf's Trial Ex. 10 at Bates No. TPS 18. TPS responded that Mr. Slinkard's request was prohibited by TPS Policy 1301, which barred speakers from addressing several topics during school board meetings where "separate and distinct procedures and forums" existed for resolving the issues those topics raise. J. Trial Ex. 5 at Bates No. TPS 14.

Although TPS denied Mr. Slinkard's request to speak at the school board meeting, it offered to connect Mr. Slinkard with the appropriate TPS contact to address his concerns if he provided additional information. Plf's Trial Ex. 10 at Bates No. TPS 19. Instead of providing the additional information, Mr. Slinkard made a separate, second request to speak at the March school board meeting about "an injustice against [his] son" that he had tried to get "resolved." *Id.* at Bates No. TPS 25. In reply, TPS explained that Mr. Slinkard would need to offer more details about his proposed topic to ensure that it did not conflict with Policy 1301. *Id.* at Bates No. TPS 26. Rather than clarifying, Mr. Slinkard withdrew his request. Dkt. 1 at 11.

The Slinkards later sued TPS, arguing, among other things, that TPS violated Mr. Slinkard's First Amendment rights when TPS rejected his

request to make a public comment during the February 2023 TPS board meeting. Dkt. 1 at 24. During trial, Mr. Slinkard moved under Rule 50(a) of the Federal Rules of Civil Procedure, asserting that the evidence established a First Amendment violation as a matter of law. The Court held Mr. Slinkard's motion in abeyance and permitted the jury to deliberate. The jury found for TPS on all counts. Dkt. 135.

II

Rule 50 of the Federal Rules of Civil Procedure enables parties to move for judgment as a matter of law by challenging the legal sufficiency of the opposing party's evidence. *See* Fed. R. Civ. P. 50(a); *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1128 (10th Cir. 2019). Judgment as a matter of law may be granted if there is no legally sufficient evidentiary basis for the nonmoving party's claim and "the court is certain the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) (internal quotation marks omitted). When reviewing a Rule 50 motion, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Id.* (internal quotation marks omitted).

Mr. Slinkard's motion for judgment as a matter of law fails because the jury had a legally sufficient basis to find for TPS on the First Amendment issue. *See Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1261 (10th Cir. 2016) ("A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." (internal quotation marks omitted)). Where Mr. Slinkard challenges the legal basis upon which the jury judged the facts, Mr. Slinkard's arguments conflate First Amendment law with the disputed factual question to which that law applies. The question at trial was whether TPS restricted Mr. Slinkard's speech because of the subject

Mr. Slinkard wished to address or because of his viewpoint, and if the restriction was viewpoint neutral, whether TPS's restriction was reasonable. Mr. Slinkard now asks the Court to treat those disputed premises as law, and in doing so, to substitute his characterization of the evidence for the jury's.

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I. But this does not mean the government cannot restrict speech at all. The government may restrict speech depending on the nature of the forum. *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1138-39 (10th Cir. 2001) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). In a limited public forum, which the parties agree is the applicable forum here [Dkts. 33 at 15; 34 at 19; 35 at 12-13], the government may restrict speech so long as the restriction is viewpoint neutral and reasonable given the forum's purpose. *See Utah Pol. Watch, Inc. v. Musselman*, 179 F.4th 1241, 1252 (10th Cir. 2026).

The Court previously determined that TPS Policy 1301 is a viewpoint-neutral restriction. Dkt. 46 at 16-17. Policy 1301 limits topics rather than viewpoints and therefore satisfies the viewpoint-neutrality requirement. *Id.* Having found Policy 1301 facially neutral, the Court submitted a single question to the jury: whether the policy was unconstitutional as applied to Mr. Slinkard. Dkt. 134 at 18. Mr. Slinkard argues that TPS applied Policy 1301 in an unconstitutional manner, raising three arguments in support of his position.

### A

First, Mr. Slinkard argued at trial that there was no factual dispute for the jury to resolve because TPS Policy 1301 was applied in a way that "prevented [Mr. Slinkard] from making a grievance to his elected officials" and that his First Amendment right "was denied when he was denied the right to speak regarding an injustice of his son." Trial Tr. 19:5-11.

He maintains that the evidence at trial establishes a First Amendment violation. Dkt. 139 at 5. To support his position, he asserts it is undisputed that TPS's decision was premised on viewpoint discrimination, that TPS rejected his request to speak only because TPS interpreted the proposed topic as "district-directed criticism," and that TPS wrongly assumed Mr. Slinkard's request "signaled criticism" even though the request did not correspond with any topic prohibited by Policy 1301. *Id.* at 3-4. Thus, he reasons, TPS did not "neutrally apply a confidentiality rule or agenda-management rule," and therefore, "on this record, the first denial was unconstitutional." *Id.* at 4-5.

It may be that a jury could have reached the conclusion preferred by Mr. Slinkard based on the evidence at trial, but that is not the question before the Court. The question posed by a Rule 50 motion is not whether the jury could have found for Mr. Slinkard, but whether a reasonable jury could have found for TPS. *See Home Loan Inv. Co.*, 827 F.3d at 1261. In this case, the jury had a legally sufficient evidentiary basis upon which it could find for TPS. Policy 1301 itself restricts speech by subject, not viewpoint: It excludes only speech concerning matters for which there is a separate resolution process, regardless of what any speaker wishes to say about those matters. J. Trial Ex. 5 at Bates No. TPS 14.

Emails from TPS indicated that TPS denied Mr. Slinkard's request because it concerned a prohibited topic. *See* Plf's Trial Ex. 10 at Bates No. TPS 19. TPS was consistent in its position that Mr. Slinkard was not permitted to speak on the proposed subject because that subject was prohibited by a straightforward application of Policy 1301. *See id.* at Bates No. TPS 23 (indicating that TPS denied Mr. Slinkard's request "based on guidelines of policy 1301 that recognized that district policies, state law, and federal law establish separate procedures for this type of complaint"); *id.* at Bates No. TPS 26 (explaining that Mr. Slinkard's February request had been denied "because it was interpreted as relating to one or more of the following topics," which

included (1) Mr. Slinkard's pending complaint against the district with the Oklahoma Department of Education, (2) Mr. Slinkard's son's suspension, (3) Ms. Slinkard's ban from East Central Middle School, (4) Ms. Slinkard's alleged misconduct as a TPS employee, and (5) the Slinkards' pending litigation against TPS). The jury was free to credit TPS's consistent statements regarding its application of TPS Policy 1301.

Mr. Slinkard suggests the evidence shows that TPS impermissibly characterized his request as criticism to prevent him from speaking. *See* Dkt. 139 at 4 (arguing the denial "protected the Board and district from anticipated criticism by recasting that criticism as an impermissible topic"). But this is merely one possible interpretation of the evidence.

The Sixth Circuit's decision in *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009), is instructive. In that case, a school board policy barred comments that were "frivolous," "repetitive," or "harassing." *Id.* at 430. After several parents' sons were dismissed from the football team, one parent requested to speak at a board meeting about "football." *Id.* Her first request was granted, but a second request to address "football" at the next month's meeting was denied as "repetitive" and "harassing." *Id.* at 431. The parents and their attorney alleged that the denial was motivated by a desire to suppress a critical viewpoint, but a jury found for the school board. *Id.* The Sixth Circuit affirmed, acknowledging that "some evidence" suggested a viewpoint-based motive but concluding that the jury had "ample bases" for reaching its conclusion. *Id.* at 435.

Here, as in *Lowery*, TPS interpreted a proposed topic. And as in *Lowery*, the record permitted the jury to find that TPS did so to determine whether the topic fell within a neutral category of excluded subjects and not to suppress a critical viewpoint. To the extent that Mr. Slinkard provided evidence to the contrary, the evidence does not require a finding in his favor.

The authorities cited by Mr. Slinkard do not require a different result. Mr. Slinkard cites *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167 (1976), for the proposition that a school board, when conducting public business, may not "give one side of a public issue a monopoly or exclude critical views because they are unwelcome." Dkt. 139 at 11. But *City of Madison* involved a state order barring a school board from letting non-union teachers address bargaining issues at its meetings, after a non-union teacher had spoken against a proposal requiring non-union teachers to pay union dues. 429 U.S. at 169-72. Here, by contrast, the record contains no evidence that anyone holding an opposing view on the subject Mr. Slinkard wished to address was permitted to speak while he was not. If anything, Policy 1301 excludes certain subjects from the public-comment period for everyone, regardless of the speaker's viewpoint.

In sum, neither Mr. Slinkard's legal arguments nor the cases he cites persuade the Court that he is entitled to judgment as a matter of law. At best, Mr. Slinkard identifies evidence and authority from which a factfinder could infer viewpoint discrimination. But Rule 50(b) requires more. Mr. Slinkard must show that the trial evidence compelled that conclusion and left no reasonable basis for the jury to find otherwise. He has not done so. The record permitted the jury to conclude that TPS applied a viewpoint-neutral subject-matter restriction, and the authorities cited by Mr. Slinkard do not foreclose that conclusion.

## B

Mr. Slinkard also argues that TPS "repeated" its constitutional violation in March when it contacted him about the comments he proposed to make during the public-comment period. Dkt. 139 at 5. In his view, TPS's request was a pretext to screen his remarks for a critical viewpoint. *Id.* The evidence at trial, however, gave the jury two grounds to reject that claim. *See* Plf's Trial Ex. 10 at Bates Nos. TPS 26-29.

First, a reasonable jury could have found that Mr. Slinkard voluntarily withdrew his request to speak. If Mr. Slinkard chose not to speak, TPS did not restrict his speech at the March meeting at all, let alone based on his viewpoint. Second, even if TPS's request bore on whether Mr. Slinkard spoke, a reasonable jury could have found that TPS acted in a viewpoint-neutral manner. Because TPS Policy 1301 excludes certain subjects from the public-comment period, TPS had a legitimate reason to ask what Mr. Slinkard intended to discuss. The jury could have concluded that TPS sought to understand his proposed topic, not to filter for a critical viewpoint. Either finding supports the verdict, so the March request provides no basis for judgment as a matter of law.

III

Finally, Mr. Slinkard argues that the jury received a legally improper instruction on the issue of viewpoint discrimination. The Court construes that challenge as a request for a new trial under Rule 59. *See* Fed. R. Civ. P. 59(a)(1)(A). To preserve an instructional challenge, a party must object on the record before the instructions and arguments are delivered, or object promptly after learning of an instruction it was not told about beforehand, "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(b)-(c). The objection must rest on the same ground later asserted, stated with sufficient clarity to make that ground "obvious, plain, or unmistakable." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005) (internal quotation marks omitted). Otherwise, review is only for plain error affecting substantial rights. Fed. R. Civ. P. 51(d)(2).

Assuming Mr. Slinkard properly preserved this objection, his challenge fails on the merits. In reviewing a legal challenge to jury instructions, the Court considers the instructions as a whole and asks whether they accurately stated the governing law and adequately guided the jury in resolving the issues before it. *See Royal Maccabees*, 393 F.3d at 1179. Because the Court ruled at summary judgment that Policy 1301 is viewpoint neutral, the question at

trial was whether TPS denied Mr. Slinkard's request because of the subject of his proposed comments or because of his viewpoint, and if the former, whether the restriction was reasonable in light of the purpose served by the public-comment period.

Mr. Slinkard contends that Jury Instruction 17 impermissibly "allowed Policy 1301 and alternative communication channels to substitute for the required question: whether TPS denied Mr. Slinkard access to public comment based on an attributed critical viewpoint." Dkt. 139 at 1. He reasons that this instruction caused the jury to believe that the exclusion was justifiable if TPS provided Mr. Slinkard with some other channel—any other way of communicating with TPS. *Id.* at 9 ("The jury was effectively told that even if TPS excluded Mr. Slinkard from public comment because of the content and viewpoint TPS attributed to his request, that exclusion could still be justified so long as he could write, email, speak privately, or pursue another process.").

The instruction, read as a whole, does no such thing. Jury Instruction 17 informed the jury that "[TPS] has the constitutional right to place limits on the content of speech based on the nature of the public comment session, *so long as those limits are viewpoint neutral.*" Dkt. 134 at 18 (emphasis added). Under that instruction, the jury could not have found for TPS if it determined that Mr. Slinkard's request was denied based on his viewpoint.

Jury Instruction 17 then explicitly told the jury to critically evaluate Mr. Slinkard's remaining opportunities to communicate with TPS officials: "[A] restriction on Mr. Slinkard's expressive activity may be invalid if the remaining modes of communication are inadequate. To assess whether the remaining modes of communication are adequate, you should consider Mr. Slinkard's ability to reach his target audience using alternative means." *Id.* The jury, therefore, was *not* instructed that impermissible restrictions become permissible if alternative channels are available; rather, the jury was

instructed that even a permissible restriction may be deemed unlawful if alternative means of communication are inadequate.

Jury Instruction 17 accurately stated the law governing limited public forums and guided the jury in resolving the First Amendment issue before it. Accordingly, Mr. Slinkard's challenge to the jury instructions, construed as a request for a new trial, is denied.

IV

For the foregoing reasons, Mr. Slinkard's renewed motion for judgment as a matter of law is denied. To the extent the motion seeks a new trial under Rule 59(a) based on alleged errors in the jury instructions, that request is also denied.

DATED this 17th day of November 2026.

JOHN D. RUSSELL
*United States District Judge*